Deaderick, J.,
delivered the opinion of the court.
The bill in this ease was filed in the Chancery Court at Cookeville, in 1868, against S. W. Gentry and John and Joseph Johnson.
Its allegations are, that the complainant became the surety for the two Johnsons for $135, the price of a horse they bought in July, 1862, of defendant Gentry; that they executed their note for the amount in current bank notes, whereas the contract was that *626 the note was to be payable in Confederate notes; that the horse was bought and sold for the Confederate service; that the writing the note for current bank notes was a fraud upon complainant.
The bill alleges that in 1865 complainant removed from Putnam to Smith County, and in 1867 removed back to Putnam County, and that while he lived in Smith County, defendant Gentry, on the 7th of July, 1865, procured an attachment from a justice of the peace upon an affidavit that complainant had absconded, and had the process levied upon a tract of fifty acres of land in Putnam county; that the attachment was returned on the same day to the office of the justice, who afterward, on the 1st of February, 1866, rendered judgment on the note against complainant for $158.46; that the justice returned the attachment with the levy and judgment to the Circuit Court of Putnam County, and the land was condemned and ordered to be sold at the April term, 1866, of that court, and was thereafter sold, and defendant Gentry became the purchaser, who now claims the land by virtue of this purchase.
The prayer for relief is founded upon the allegations that the note was executed for an illegal purpose, i. e., for a horse for the Confederate artillery service; that it was fraudulently taken for current bank notes, when- the contract was that it should be paid in Confederate notes; that complainant was a surety, and the property .of the principals should have been first exhausted; and that the charge in the affidavit for an attachment falsely alleged that complainant had long absconded.
*627 The bill states that complainant does not know whether publication was made in a newspaper in said case or not.
Gentry answered the bill, and after very emphatically denying that the Johnsons were principals and complainant surety on the note, or that he agreed to take Confederate money for the horse, or had any knowledge that the horse was intended for the Confederate service, he refers to the attachment proceed-' ings, makes them a part of his answer, and files a transcript of them, insisting upon their validity.
If the attachment proceedings are not void, the validity of the judgment thereunder cannot be impeached in this proceeding.
The transcript shows that, on the 7th of July, 1865, Gentry made an affidavit for an attachment against the property of complainant as an absconding debtor, and executed bond with security, and that an attachment was issued by the justice, and was levied on land, and returned before the justice on the 7th of July, 1865, with the property levied on described by metes and bounds.
The affidavit and writ of attachment recite that Boyd was justly indebted to Gentry in the sum of $158.46, and the note of Boyd appears in the file of the justice’s proceedings * as the evidence • of this indebtedness.
Thereupon, the proceedings were stayed until the 1st of February, 1866, and publication was ordered requiring the defendant to appear at the justice’s house on the 1st of February, 1866, to defend, etc.
*628 On the 1st of February, 1867, the defendant, as recited in the justice’s judgment, having failed to appear, and the plaintiff having established his claim, and publication having been made for more than four successive weeks, judgment was rendered in favor of the plaintiff for $158.16.
These proceedings were filed at the April term, 1866, of the Circuit Court of Putnam County, and the land was condemned and sold by the order of court and Gentry became the purchaser.
Although the bill does not allege the invalidity of the proceedings before the justice and in the circuit court in express terms, the argument has been chiefly directed to this conclusion.
The affidavit for the attachment states the amount of the debt, but does not state the nature of it, i. e., whether due by note or account; but the note itself is filed with the papers: nor is it stated that the claim is just, in hcec verba; but the affidavit does state that defendant is justly indebted, etc., which we regard as of equivalent signification.
In these two particulars it does not come up literally to the requirements of Code, sec. 3469, and if the judgment were here by appeal or writ of error, perhaps, on the authority of the cases of Sullivan v. Fugate, 1 Heis., 20, and the other cases there cited, we might reverse it.
The language used in those cases implies that the proceedings therein were void. They were cases which were before this court upon an appeal, or writ of error, for revision, and the errors committed warranted the *629 holding that the judgments were irregular and unauthorized by law.
In the case of Sullivan v. Fugate, the affidavit did not aver that the claim was just, nor state the nature of the demand, and for these reasons it was held fatally defective.
But in the case before us, the proceedings are collaterally attacked; and, although they may be somewhat irregular, they are not void in the sense that they are an absolute, nullity. The justice and the court had jurisdiction of the person and subject matter; and, in this collateral proceeding, notwithstanding there may be errors and irregularities in the proceedings, the judgment is not void.
Where, however, the statute directs publication to be made, as well as the levy of the attachment, as a substitute for personal service of process, and the publication prescribed is not made, there is a failure of jurisdiction of the person, and any judgment pronounced in such case would be absolutely void.
The Chancellor dismissed the bill in the present case, and we affirm his (decree.